106

**In re AMERICAN S. S. NAV. CO.**

No. 6665.

District Court, E. D. Pennsylvania.

Jan. 26, 1933.

On Petition for Rehearing July 6, 1933.

William Potter Davis, Jr., of Philadelphia, Pa., for creditor.

A. S. Ashbridge, Jr., of Philadelphia, Pa., for trustee.

KIRKPATRICK, District Judge.

On March 9, 1920, a petition in bankruptcy was filed against the American Steamship Navigation Co., Inc., and in due course it was adjudicated a bankrupt.

On February 2, 1921, A. Lincoln Rauch, trading as Continental Lumber Company, filed a proof of claim with the referee in the amount of $6,113 for damages arising from the breach by the bankrupt of an alleged contract to carry a quantity of lumber from Philadelphia to Barcelona, Spain, for an agreed price.

I assume that the claim was duly allowed by the referee, because in August, 1929 (more than eight years later), a schedule of distribution of the balance in the trustee's hands was submitted by the referee in which it comes in for its distributive share.

I must assume also that the debt was duly liquidated at the figure claimed. At any rate, the trustee and the creditors appear to have waived the matter of its liquidation. No one in the course of these immensely protracted proceedings has raised that question, and of course where damages for breach of contract in a definite

amount are claimed, if there is no dispute as to the amount, all parties in interest may treat the claim as liquidated, even though its validity and bona fides may be questioned. See In re J. M. Mertens & Co. (C.C.A.) 147 F. 177.

As soon as the claim appeared in the referee's schedule of distribution, which, as has been noted, was eight and a half years after the claim had been filed, Reynolds, a creditor and former general manager of the bankrupt company, filed objections to this and other claims and appeared before the court asking that the order of the referee be vacated so far as the claims objected to were concerned. Thereupon the court referred these objections to the referee nunc pro tunc for his consideration and for the allowance or disallowance of the contested claims. Pursuant to this order, further specific objections were filed to the Rauch claim, one of which was that Rauch never tendered the lumber for carriage and another of which denied the authority of the person who made the contract for the bankrupt.

On March 26, 1931 (more than ten years after the claim had been filed), the referee held a hearing. Mr. Rauch, who was engaged in business in South America, came to Philadelphia to attend this meeting, and presented his claim, resting upon the original proof of claim filed as a prima facie case. He was called for cross-examination, and stated that his own records had not been preserved, but that it could be ascertained from the bankrupt's own records that 269,000 feet of the 300,000 feet of lumber (which was the total amount to be shipped under the contract) had been tendered at the dock for shipment. Thereupon counsel for the objecting creditor (and for the trustee) admitted of record that the bankrupt's records showed the tender of 244,660 feet.

No other witnesses were called, and at the conclusion of his examination Mr. Rauch was told by the referee that it would not be necessary for him to come back. He then returned to South America. Of course, he understood that his claim was still in dispute, and that further proofs would be offered against it. But, in view of the admission placed in the record, he was certainly justified in assuming that the tender of 244,660 feet would not be further controverted. The tender was not the only issue in the case. There was still the claimant's allegation of reshipment through another steamship company at a higher price, which fixed his damages.

Subsequent meetings were held. Counsel for the objecting creditor became honestly convinced that his admission as to the tender was erroneous and retracted it. The objecting creditor, former general manager of the bankrupt, testified at length that no lumber whatever was tendered by the claimant in time for shipment under the contract. Disinterested witnesses were called and letters of the claimant were offered which appeared to substantiate this testimony. Counsel for the claimant made "a gallant effort" (as the referee said) to controvert this evidence by records from the railroad company, from other lumber dealers, and shipping companies and from the New York Customs House, but found that all records of the transaction kept by those parties had been destroyed long prior to 1931.

The referee disallowed the claim, filing a carefully considered opinion, in which he dealt with the testimony exhaustively, finding among other matters that no lumber was tendered for delivery in accordance with the terms of the contract, and therefore that the bankrupt was not in fault.

The referee, undoubtedly convinced by the testimony that the claim was not valid, felt that the case did not call for the application of the doctrine of laches against the objecting creditor.

I am unable to take that view of it. Usually applied as a defense against stale claims in equity, the doctrine of laches is equally applicable in bankruptcy against a stale defense. Recognizing the fact that the basis of the doctrine of laches is unfair prejudice to a party's position and that mere lapse of time will not ordinarily evoke it, I am still unable to see how the unconscionable delay in raising these objections, the admission of counsel for objecting creditor, and the assurance of the referee that the claimant need not return, could have failed to have injured beyond repair the claimant's ability properly to present his claim and to meet the defense raised against it.

The learned referee, basing his conclusion upon letters signed by the claimant and offered after his return to South America, upon the records of the bankrupt, and the testimony of disinterested witnesses,

says that the claimant could not have been prejudiced by the delay because he had no case anyway. This, however, is merely begging the question.

The referee further felt that formal defects in the proof of claim filed impaired it as a self-sustaining claim and therefore avoided any question of laches. Even applying rather strict requirements of pleading, I am unable to follow the referee in this conclusion or to see in what manner the proof of claim is defective. It alleges all the facts and states the amount claimed with clearness and precision. True, the written offer and acceptance alleged to constitute the contract would not be binding upon the bankrupt unless the agency of those who executed them somehow appeared, but the proof of claim unqualifiedly avers that Silver, who signed as accepting the offer, was the authorized agent of the bankrupt, and that Caldwell & Co., who executed the other document or formal acceptance of the offer, were the agents of the claimant. So far as the prima facie case established by the proof of claim is concerned, there is no room for the conclusion that the contract was made with Caldwell & Co. in their own right and not with the claimant.

The objecting creditor now pleads in avoidance of laches that the claim was not originally scheduled and that he personally had no notice of it until it appeared in the referee's schedule of distribution in 1929. That may be so, but the trustee knew all about it. He had filed it as attorney for the claimant. As to the impropriety involved in this, it is only necessary to refer to the opinion of the Supreme Court in Weil v. Neary, 278 U.S. 160, 49 S.Ct. 144, 73 L.Ed. 243. Unfortunately for the creditors, the laches of the trustee must be imputed to those for whom he acts. Otherwise the doctrine might as well be abandoned so far as bankruptcy proceedings are concerned.

In addition, while the individual creditor does not usually inspect each claim filed, nevertheless he has the right to do so. So far as he relies upon the trustee to protect the estate against improper claims, he is bound by what the trustee does or fails to do, and, if the trustee is engaged in representing claimants, the creditor may suffer.

The order of the referee is reversed, and the claim will be allowed.

### On Petition for Rehearing.

A final order of this court directing the allowance of the claim of A. Lincoln Rauch, a creditor, was entered February 21. The petitioner, another creditor, having allowed the statutory period for appeal to elapse without taking any appeal, attempted to remedy the situation by an appeal nunc pro tunc, which this court allowed on April 5, but which the Circuit Court of Appeals dismissed on May 2. Thereafter, this petition was presented asking for a rehearing.

In cases of this kind, two distinct questions arise which are often confused. First, has this court the power to grant a rehearing? That is all that is before me. Second, if so, will it be effective to revive the petitioner's lost right of appeal? With that I have nothing to do.

1. There is no doubt that I have the general power to grant a rehearing and upon such rehearing vacate, modify, or reaffirm the decree heretofore entered. "The District Court, for all the purposes of its bankruptcy jurisdiction, is always open. It has no separate terms." Sandusky v. First National Bank, 23 Wall. (90 U.S.) 289, 292, 293, 23 L.Ed. 155. That was under the act of 1867 (14 Stat. 517).

This jurisdiction may have been somewhat restricted by section 57k of the Bankruptcy Act of 1898, 11 U.S.C.A. § 93(k) which provides that "Claims which have been allowed may be reconsidered for Cause," etc. (See In re Stearns & White Co. [C.C.A.] 295 F. 833, 836), but I do not interpret section 57k as limiting the jurisdiction to cases in which the District Court proposes to rehear the case on the merits, although this was the view of the Circuit Court of Appeals for the Seventh Circuit in Re Stearns & White Co. In view of the almost uniform holdings of the federal courts to the effect that a rehearing may be granted in order to revive a right of appeal [In re Wright (D.C.Mass.) 96 F. 820; In re Hudson Clothing Co. (D.C.) 140 F. 49; West v. W. A. McLaughlin & Co.'s Trustee (C.C.A.6th) 162 F. 124; Bonner v. Potterf (C.C.A.10th) 47 F.(2d) 852], I think that a discretion properly exercised for that purpose is a reconsideration "for cause" within the meaning of section 57k.

Some of the cases cited above (In re Hudson Clothing Co.; West v. W. A. McLaughlin & Co.'s Trustee) hold that dis-

cretion to grant a rehearing for the purpose of reinstating a lapsed right of appeal may be abused, but none of them except In re Stearns & White Co. deny the jurisdiction.

Concluding that I have jurisdiction, the petition for a rehearing is granted.

2. It is granted solely for the purpose of allowing the petitioner to present his appeal to the Circuit Court of Appeals.

I have stated the purpose of this order and will state the reasons which prompt it, because the Circuit Court of Appeals may desire to inquire whether there has been an abuse of discretion. The reasons why I believe that my discretion should be exercised in favor of the petitioner are as follows:

(a) My order allowing the claim was entered upon the sole ground of laches barring the defense offered, and therefore did not feel called upon to pass upon the fact questions raised by the defense. I think that in any case in which the court feels that the situation precludes a consideration of any phase of what may be called the merits, a review is desirable.

(b) The petitioner has some excuse for failing to appeal within the statutory period. He is not the trustee. The trustee originally presented, as attorney for the claimant, the claim which is now being resisted and represented the claimant over a long period of time. Whether he still continues to do so has not been made entirely clear to me, but at any rate it is easy to see that the trustee's double position has been a source of embarrassment to the petitioner and other creditors throughout the whole proceeding.

(c) The claim is a sizeable one, and a very able referee, after an exhaustive investigation, came to the conclusion that it was entirely without substance.

The foregoing is not to be taken as anything more than a statement of the grounds upon which I think that this case is proper for review on appeal. I express no opinion as to whether the petitioner's appeal can legally be prosecuted, or whether his right is gone beyond recall. That question I conceive to be for the appellate court. Furthermore, I entertain very little doubt as to the correctness of my ruling as to laches. Lastly, I believe that I have already considered every question which has been urged upon me at the presentation of this motion, and therefore think

that anything further by way of a rehearing and reconsideration upon the merits would be unnecessary.

Having granted the petition for a rehearing, the argument at the presentation of that petition may be taken as the rehearing, and when the order granting this petition is entered, there may be entered immediately thereafter an order reaffirming the original decree of this court upon the certificate of review.