In re MIKART, INC., Debtor.

ANSLEY PARK PLUMBING & HEATING CO., INC., Plaintiff,

v.

MIKART, INC., Defendant.

Bankruptcy No. B78–3258A.

United States Bankruptcy Court,
N. D. Georgia,
Atlanta Division.

Feb. 12, 1981.

Stephen C. Whicker, Somers & Altenbach, Atlanta, Ga., for Ansley Park Plumbing & Heating.

John J. Capo, Atlanta, Ga., for Mikart.

## ORDER

HUGH ROBINSON, Bankruptcy Judge.

The "Petition to Determine Status and Amount of Creditor's Claim" filed by Ansley Park Plumbing & Heating Co., Inc. brought the matters involved herein before the Court. This case has been presented to the Court for decision on the basis of briefs and stipulation of facts submitted by the parties. Having considered these briefs, the stipulation of facts and the pleadings on file the Court makes the following decision.

## FINDINGS OF FACT

1. On or about February 28, 1978 Ansley Park Plumbing & Heating Co., Inc., (hereinafter referred to as "Petitioner"), contracted with Mikart, Inc., (hereinafter referred to as "Debtor"), to perform certain plumbing, heating and air conditioning work and to install certain equipment for the Debtor at the Debtor's principal place of business.

2. The premises in which the improvements were made and the equipment was installed were leased by Debtor for a period of five years with two options to renew for five-year terms.

3. Under the terms of the contract between Petitioner and Debtor title to all equipment installed was to remain in Petitioner until all sums due to Petitioner were paid. Any equipment or labor furnished by Petitioner in addition to those contracted for would be paid for by Debtor as an "extra" at Petitioner's normal rates.

4. At or near the conclusion of the work to be performed by Petitioner per the written contract, Debtor requested certain "extra work" to be done by Petitioner. This extra work was performed by Petitioner and was completed on or about October 2, 1978.

5. The cost of the extra work for labor, materials and equipment was $8,869.51. This sum was not paid by Debtor.

6. On December 28, 1978 Debtor filed a petition under Chapter XI of the Bankruptcy Act. Debtor filed a plan of arrangement on October 15, 1979. This plan was confirmed by the Court on January 21, 1980.

7. Under the provisions of Debtor's plan the claims of secured creditors will be paid in full. Unsecured creditors will receive payment of 50% of their respective claims

under an installment method of payment commencing in October of 1981.

8. Petitioner filed a proof of claim on September 21, 1979. This proof of claim was amended on November 9, 1979.

9. Debtor interposed no opposition to Petitioner's proof of claim as to either the amount or the status of the claim.

10. As of this date Debtor has made no provision for the payment of Petitioner's claim and has denied Petitioner's status as a secured creditor.

11. Under Article VIII of Debtor's plan of arrangement this Court retained jurisdiction after confirmation for several purposes including the determination of the validity and amount of any disputed secured claims.

12. On April 2, 1980 Petitioner filed a "Petition to Determine Status and Amount of Creditor's Claim".

## APPLICABLE LAW

### CONDITIONAL SALES CONTRACT

Petitioner contends that its claim is secured for the reason that Petitioner sold goods to and performed labor for Debtor pursuant to a conditional sales contract.

The contract between Petitioner and Debtor dated February 28, 1978 provides that Petitioner will furnish certain specified equipment and perform labor expressly provided for therein. Contained in the contract is the provision, "Title to the equipment will remain [in] the sellers until all sums due have been paid". A separate provision deals with extra work performed by Petitioner. This provision states, "Any equipment or labor furnished by the seller in addition to that required by the proposal will be paid for by the purchaser as an 'Extra' at the sellers normal rates".

■ Under Georgia law reservation by a seller of title in goods shipped or delivered to a buyer is limited in effect to a reservation of a security interest. Ga.Code Ann. § 109A–2–401(1). Therefore Petitioner's attempted retention of title actually reserved a security interest in the equipment sold and delivered to Debtor under the con-

tract. It must be determined whether this security interest in the equipment also secures sums due for extra work performed by Petitioner. In order to make this determination the Court must examine the language of the contract to ascertain the intent of the parties. *Goff v. Cooper,* 110 Ga.App. 339, 138 S.E.2d 449 (1964).

■ With the exception of the one provision concerning extra work the contract seems to apply only to the specific equipment and labor provided for therein. "Extras" are distinguished from the equipment and labor contracted for in the agreement of February 28, 1978. Whereas a specific price is stated for the equipment and labor to be provided under the contract, extras are to be paid for "at the sellers normal rates". There is no contractual provision stating that the security interest reserved in the equipment shall secure future obligations incurred by Debtor nor is there a statement that Debtor's obligations shall be secured by after-acquired property. After reviewing the terms of the contract, the Court must conclude that the security interest reserved by Petitioner in equipment furnished to Debtor under the contract does not secure obligations of Debtor incurred for "extras".

■ Even if Petitioner's security interest was intended to secure debts incurred for extra work, this Court could not determine that Petitioner's claim is secured. There is no evidence in the record that Petitioner properly perfected its security interest in the equipment in accordance with the requirements of Georgia law. However, this is immaterial for the Court has concluded that Petitioner's security interest in the equipment does not secure debts incurred for extra work.

### MATERIALMAN'S LIEN

Petitioner contends that it is a secured creditor for the reason that Petitioner filed a materialman's lien against the property leased by Debtor.

The holder of a valid materialman's lien is a secured creditor within the meaning of

Section 1(28) of the Bankruptcy Act, 11 U.S.C. § 1(28). *In Re: Cayne Construction Company*, 58 F.2d 664 (E.D.N.Y.1932). A determination of the merits of Petitioner's claim to a secured status necessitates an inquiry into the validity of the materialman's lien filed by Petitioner.

It has been stipulated that Petitioner filed a materialman's lien against the property leased by Debtor on December 28, 1978 at 12:59 P.M. The face of Debtor's bankruptcy petition reveals that it was filed on December 28, 1978 at 9:06 A.M., approximately four hours prior to the filing of the lien.

■ Rule 11–44(a) of the Bankruptcy Rules provides that the filing of a Chapter XI petition operates as a stay of the commencement or the continuation of any court proceeding or other proceeding against the debtor, or the enforcement of any judgment against him, or of any act or the commencement or continuation of any court proceeding to enforce any lien against his property, or of any court proceeding, except a case pending under Chapter X of the Bankruptcy Act. Because Petitioner filed a materialman's lien after Debtor's bankruptcy petition was filed an issue is raised as to whether the automatic stay was violated. This issue was before the Fifth Circuit in *In Re: Marietta Baptist Tabernacle, Inc.*, 576 F.2d 1237 (5th Cir. 1978). The Court held that the filing of a materialman's lien pursuant to Georgia law does not violate the automatic stay provisions of Rule 11–44(a). The Fifth Circuit interpreted Georgia's lien statute and determined that it does not provide for a means to enforce a lien; it merely provides a way to preserve a lien. It was said by the Court:

> "The filing of notice [of a materialman's lien] does not operate to dismember or dispose of the Debtor's property. Notice merely operates to protect the interest of the person claiming a lien."

576 F.2d at 1239.

The Court concludes that Petitioner did not violate the automatic stay by filing a materialman's lien after Debtor's bankruptcy petition was filed.

■ Debtor leases the property against which Petitioner filed a materialman's lien. Although a materialman's lien cannot attach to a usufruct, *Jones v. E. I. Rooks & Son*, 78 Ga.App. 790, 52 S.E.2d 580 (1949), it can attach to the interest of a lessee who has an estate for years. *James G. Wilson Manufacturing Co. v. Chamberlin-Johnson-Dubose Company*, 140 Ga. 593, 79 S.E. 465 (1913).

■ Generally any lease for a period of time of less than five years is presumed to be a usufruct unless otherwise provided in the lease agreement. Ga.Code Ann. § 61–101. Leases which extend for a period of five years or more pass an estate for years unless the terms of the agreement restrict the lessee's interest to a usufruct. *Warehouses Inc. v. Wetherbee*, 203 Ga. 483, 46 S.E.2d 894 (1948). To determine what interest the parties to a lease agreement intended to be conveyed, the terms of the agreement itself must be scrutinized. *Allright Parking of Georgia, Inc. v. Joint City-County Board of Tax Assessors for the City of Atlanta-County of Fulton*, 244 Ga. 378, 260 S.E.2d 315 (1979).

■ Because Debtor's lease is for a term of five years, there is a presumption that Debtor's interest in the leased premises is an estate for years. Furthermore the terms of the lease indicate that the parties to the lease agreement intended that an estate for years would be conveyed to Debtor. The instrument is termed a "Commercial Lease Agreement" and the parties are termed "lessor" and "lessee" rather than "landlord" and "tenant". The period of the lease is referred to as a "term" and there is no express provision limiting Debtor's interest to a usufruct. These factors were considered indications of an estate for years rather than a usufruct in *Warehouses Inc. v. Wetherbee, supra*. Under the terms of the lease the lessee is required to maintain the premises in good order, to pay all taxes and to pay part of the insurance premiums. These factors were considered to be characteristics of an estate for years in *Allright Parking of Georgia, Inc. v. Joint City-Coun-*

*ty Board of Tax Assessors for the City of Atlanta-County of Fulton, supra.* The lease requires the lessee to comply with all government regulations at his own expense. There is also an option to purchase the property. These provisions also indicate that an estate for years was conveyed to Debtor.

There are some provisions in the lease which are characteristic of a usufruct. The use of the leased premises is restricted to distribution and/or light manufacturing. Approval of the lessor is required before the lessee may make improvements on the property and before the lessee may assign or sublet the premises. This type of approval provision was said to be characteristic of a usufruct in *Allright Parking of Georgia, Inc. v. Joint City-County Board of Tax Assessors for the City of Atlanta-County of Fulton, supra.*

■ Although there are some provisions in the lease which are generally indicative of a usufruct, the agreement as a whole appears to convey an estate for years. An estate for years is not reduced to a usufruct because certain limitations are put on its use. *Warehouses Inc. v. Wetherbee, supra.* The Court concludes that Debtors interest in the leased property is an estate for years.

Because Debtor's interest in the leased premises is an estate for years, a materialman's lien could attach thereto. However Debtor contends that no valid lien was recorded against Debtor, therefore Petitioner does not have a perfected lien against Debtor's leasehold interest.

■ The materialman's lien filed by Petitioner on December 28, 1978 asserts a lien "upon certain improved real estate located in Fulton County, and known as 2090 Marietta Blvd. N.W. Atlanta, Georgia and owned by Marilyn & Leonard Rubin and others". There is no statement in the recorded materialman's lien that a lien is being asserted against the leasehold interest of Debtor. A materialman's lien recorded against property owned by Marilyn and Leonard Rubin and others does not establish that such a lien was recorded against

the property of Debtor. *Jennings, Gresham & Company v. Huggins,* 125 Ga. 338, 54 S.E. 169 (1906); *Fowler v. Roxboro Homes, Inc.,* 98 Ga.App. 829, 107 S.E.2d 285 (1959); *Nix v. Luke,* 96 Ga.App. 123, 99 S.E.2d 446 (1957). As there is no other evidence indicating that Petitioner filed a materialman's lien against Debtor's leasehold interest, the Court must conclude that Petitioner failed to prove that it perfected a materialman's lien against Debtor's estate for years in the manner required by Ga.Code Ann. § 67–2002. Under these circumstances the Court cannot find that Petitioner is a secured creditor.

## LACHES

Petitioner contends that Debtor's objection to Petitioner's status as a secured creditor is barred by the doctrine of laches.

Petitioner filed a proof of claim in this bankruptcy case on September 21, 1979. The proof of claim stated that the debt owed to Petitioner was unsecured. On November 9, 1979 the proof of claim was amended to assert a secured claim. Debtor did not object to the amended proof of claim until after Petitioner filed the petition to determine the status and amount of its claim. Petitioner contends that Debtor is barred by the doctrine of laches from asserting an objection to Petitioner's claim at this time.

■ The doctrine of laches may preclude a debtor from asserting belated objections to a proof of claim. *In Re: J'Ville Homes, Inc.,* 376 F.Supp. 400 (N.D.Tex. 1974). Although a debtor may be barred from asserting an objection to a claim, generally the doctrine of laches will be invoked only when there will be prejudice to a party's position. Mere lapse of time is usually insufficient to activate this doctrine. *In Re: American S.S. Nav. Co.,* 14 F.Supp. 106 (E.D.Pa.1933) affirmed sub nom. *Cooper v. Rauch,* 82 F.2d 1005 (3rd Cir. 1936).

■ Petitioner asserts that its rights have been prejudiced by Debtor's delay in objecting to Petitioner's status as a secured creditor. However, Petitioner has offered

nothing more than this bald assertion to support its argument that the doctrine of laches should be applied in this case. As there has been no showing of prejudice to Petitioner's rights, the Court concludes that Debtor is not precluded by the doctrine of laches from asserting objections to Petitioner's status as a secured creditor.

### CONCLUSIONS OF LAW

1. The security agreement created by the conditional sales contract between Petitioner and Debtor did not secure Debtor's obligations for "extras" performed by Petitioner.

2. Petitioner failed to prove that it had properly recorded a materialman's lien against the leasehold interest of Debtor.

3. Petitioner is not a secured creditor of Debtor.

4. Debtor is not barred by the doctrine of laches from asserting objections to Petitioner's status as a secured creditor. It is therefore

ORDERED that the claim of Petitioner is an unsecured claim; and it is further

ORDERED that the amount of Petitioner's unsecured claim is $8,869.51; and it is further

ORDERED that Debtor shall pay Petitioner's unsecured claim in accordance with the terms and conditions of Debtor's plan of arrangement.

So ordered.