In re Elmer D. WERTH, Debtor.

Bankruptcy No. 80 B 3483 M.

United States Bankruptcy Court,
D. Colorado.

April 12, 1983.

Lee M. Kutner, Paul D. Rubner, P.C., Denver, Colo., for debtor.

David Oppenheim, Office of the U.S. Trustee, Denver, Colo.

James Burghardt, Head, Moye, Giles and O'Keefe, Denver, Colo., for Intra West Bank of Denver.

Wm. H. Rutter, Sherman and Howard, Denver, Colo., for First Nat. Leasing.

Thomas Tomazin, Englewood, Colo., for Sheridan Leasing and Equitable Leasing.

## MEMORANDUM OPINION

JAY L. GUECK, Bankruptcy Judge.

THIS MATTER comes before the Court for hearing on the adequacy of a Disclosure Statement filed in the above referenced matter by the debtor-in-possession, Elmer Werth. The Disclosure Statement is unique in that it refers to two Amended Plans of Reorganization proposed by the debtor-in-possession. The debtor filed both plans simultaneously and alternatively. The first Plan contemplates the retention of certain third party litigation. The second Plan contemplates the abandonment of that litigation as a part of the proposed Plan of Reorganization. The Disclosure Statement was applicable to both Plans.

Three parties have filed objections to the proposed Disclosure Statement. The United States Trustee has taken the lead in interposing objections, beginning with the caption, and, in summary, has contended that the debtor has failed to disclose adequate information, as required by 11 U.S.C. § 1125(a)(1), to enable the creditors to make an informed decision. Additionally, the U.S. Trustee has objected to the simultaneous filing of multiple plans.

IntraWest Bank of Denver joins with the U.S. Trustee in the objections and has set forth various additional objections of its own. Finally, First National Leasing, Inc. has also set forth numerous objections.

The debtor agreed, at the hearing, to concede some of the objections and modify the statement accordingly. Those concessions are later set forth herein.

With respect to the objections contested by the debtor, including the filing of multiple plans, various issues are presented for determination. Those issues are as follows:

## ISSUES

1. Can the debtor in possession submit more than one plan at the same time?

2. Can the debtor in possession be compelled to reveal in the disclosure statement the objections to claims he intends to bring

against creditors and the bases for such objections to claims?

3. What further information, as requested by the objecting creditors, is required for an adequate disclosure statement?

## DISCUSSION

### I

*Can the debtor in possession submit more than one plan at the same time?*

■ The only legal authority on this point has been provided by the office of the United States Trustee. The U.S. Trustee points to 11 U.S.C. § 1121(a) which states, "the debtor may file *a* plan . . ." (emphasis added), and argues that this section prevents the debtor from filing more than one plan. Nothing appears in the legislative history that would resolve the issue. However, looking to 11 U.S.C. § 102, relating to Rules of Construction, it is noted in subsection (7) that "the singular includes the plural; . . ." Therefore, I conclude that § 1121 must be read to allow the debtor to file more than one plan. Presumably, if Congress had intended to limit the debtor in this regard, it could easily have provided that the debtor shall have only one plan under consideration at any given time. It did not so provide.

There may be instances where the submission of multiple plans is confusing, lacks good faith, or for some other reason is not fair and equitable. No such reasons appear in this case. I see no reason to preclude the opportunity to allow creditors to make an immediate choice with respect to their preference between two plans instead of submitting first one to be followed by another in the event of rejection. The Court can, of course, confirm only one plan pursuant to 11 U.S.C. § 1129(c). The Disclosure Statement can and should include a clearly worded provision advising the equity holders and claimants to accept one or the other or reject both plans. Further, the Disclosure Statement should clearly highlight the differences between the plans in a separate section and make clear to which plan it is referring when discussing the alternatives.

A previous extension of the debtor's exclusive right to submit a plan has expired. Thus, in allowing the debtor to submit multiple plans, the equity holders and claimants are in no way precluded from submitting their own plan.

Based upon the foregoing discussion, it is my determination that the debtor may submit multiple plans so long as the plans and disclosure statement are not unduly confusing and the equity holders and claimants are adequately advised of their alternatives.

### II

*Can the debtor in possession be compelled to reveal in the Disclosure Statement the objections to claims he intends to bring against creditors and the bases for such objections to claims?*

■ An objection to a claim may be made at any point in the bankruptcy proceedings, and the right to object is only limited by the doctrine of laches. *Matter of REA Holding Corp.,* 8 B.R. 75 (Bkrtcy.S.D.N.Y.1980); See, also, *In re Mikart,* 9 B.R. 144 (Bkrtcy.N.D.Ga.1981). In *Matter of REA Holding Corp., supra,* an amended complaint seeking disallowance of claims was filed by the Trustee more than two and one-half years after the commencement of the adversary proceeding. Although that case involved a Chapter XI proceeding under the Bankruptcy Act, its holding is applicable herein. After denying a motion to dismiss pursuant to F.R.C.P. 41(a) for failure to prosecute, the Court held, "the sixth claim of the amended complaint objects to the allowance of creditors' proofs of claim. Such action may be made at any time, and is therefore not barred by statute of limitations." *Matter of REA Holding Corp., supra,* at page 82.

■ Nonetheless, the creditors here urge that the circumstances in this case require the debtor to disclose his intent to object to claims of creditors called upon to accept or reject these plans.

The Court in this district, in *In re Stanley Hotel,* 13 B.R. 926 (Bkrtcy.Colo.1981), speaking through Judge Moore, held that

"the purpose of a disclosure statement is to inform equity holders and claimants, as fully as possible, about the possible financial results of acceptance or rejection of a particular plan . . . . the information provided should be comprised of all these factors presently known to the plan proponent that bear upon the success or failure of the proposals contained in the plan." *In re Stanley Hotel, supra,* at page 929. In my judgment, the objections to claims do not bear on the success or failure of the plan in this case. A different answer may be mandated in a case where successful objections are intended to fund a plan. The value of the estate as presently reported in the disclosure statement is at its minimum, and any successful objections to claims will serve to increase the assets of the estate for the benefit of creditors. The informed choice of the creditors will not be enhanced because of the uncertainties as to which claims will be disputed as well as the uncertainties of the outcome of these proceedings.

In this regard, it is noted that the Court further stated in *Stanley Hotel, supra,* as follows:

"It is not necessary to the adequate information standard for a disclosure statement to specifically state obviously implicit negatives or to speculate as to future uncertainties, such as the consequences of various possible outcomes of pending litigation." *In re Stanley Hotel, supra,* at page 935.

In light of the principles contained in *In re Stanley Hotel, supra,* I hold that the debtor in possession, Elmer Werth, is not required by 11 U.S.C. § 1125, or *In re Stanley Hotel, supra,* to disclose at this time the claims to which he intends to object. The defenses to any such objections, as detailed in *In re Mikart, supra,* will be entertained at such appropriate time as they are raised.

### III

*What further information, as requested by the objecting creditors, is required for an adequate Disclosure Statement?*

■ The matters to be included in the Disclosure Statement are tested against the criteria set forth in *In re Stanley Hotel, supra.* As indicated in that decision, what constitutes a meaningful Disclosure Statement will vary depending upon the circumstances of each case. The adequacy of information as provided for in 11 U.S.C. § 1125(a) involves a reasonable practicability standard in light of the debtors books, records, nature and history. There should be, consistent with this standard, enough information provided to interested persons so that they may make an informed choice between two alternatives. In this regard, we must be mindful that the purpose of the Disclosure Statement is to give meaningful information to a "typical" investor who might find it effective in making that informed choice. Thus, it is unnecessary to overburden the Disclosure Statement with information which might be helpful and comprehensible to lawyers but incomprehensible to lay people. In short, this should be a document that is complete enough and intelligible enough to allow a "typical investor" to make an informed determination as to which, if either, of two Plans should be adopted. See, *In re Stanley Hotel, supra.*

■ At the hearing on the objections to the proposed Disclosure Statement, the debtor agreed that certain changes should be made. These modifications are as follows:

1. Information relating to the payoff figure of the HEMCO promissory note will be revised to reflect that the payoff figure is unclear due to provisions for repayment as condominiums are sold. It will also be indicated that resolution of this matter should be accomplished by June, 1983, at which time more accurate information will be available.

The status of the "Anderson" promissory note will be clarified in the Disclosure Statement. Finally, the Statement will reflect the appraised amount of the residence, and the date of the appraisals. This can be done by referencing to an Exhibit attached to the Statement.

2. The second full paragraph of page 9 will be revised for greater accuracy and detail relating to priority creditors and their treatment.

3. The manner of treatment of a claim of the Internal Revenue Service will be revised and specifically set forth.

4. The debtor will insert a paragraph briefly summarizing the basis of its claims against the IntraWest Bank and any other third parties. This summary should include the anticipated expenses of litigation and the debtors best estimate of the result to be achieved.

5. Pages 11 and 12 of the Disclosure Statement will be modified in an effort to set forth facts and alternatives rather than contentions. To the extent comparison with a Chapter 7 proceeding is discussed, the Disclosure Statement should indicate the relative costs and expenses expected to be incurred in a Chapter 11 and a Chapter 7 proceeding. Further, it should be pointed out that values in a Chapter 7 proceeding may be more *or* less than appraised values, since assets might be sold at auction in a Chapter 7 proceeding. It is not necessary for the debtor to prognosticate what might happen at any such auction.

6. The attorneys' fees and accountant's fees set forth in Exhibit A will be updated to set forth what total fees are claimed, what has been approved and what is disputed.

7. Estimates of fair market value, as set forth in Exhibit A to the Disclosure Statement, are based upon appraisals or other professional estimates, and this will be more specifically set forth in the Statement or Exhibit.

8. The treatment of claims involving Donna Werth will be set forth.

Additionally, based upon the arguments presented at the hearing, together with the authority relied upon herein, it would seem that the following should also be included in any subsequent Disclosure Statement:

1. With respect to the Don/Mark Partnership and the Elmar Enterprises, a summarization of applicable parts of those Disclosure Statements should be set forth in this Statement, including information relating to estimated values and claims in order to accomplish a realistic estimate of value to this estate. If such estimates are so uncertain as to be speculative, this can simply be indicated in the Disclosure Statement. There should still be a reference to the Disclosure Statements in Don/Mark and Elmar Enterprises for any further information.

2. No further detail is required with respect to the H & R Farms discussion, except to set forth whether there exists any assets or debts, relative to H & R Farms, which might bear upon the Plan in this estate.

### CONCLUSION

Based upon the foregoing discussion, it is hereby ORDERED:

1. The debtor-in-possession may submit the two alternative Plans in conformity with the discussion herein;

2. The Disclosure Statement need not indicate that certain claims may be the subject of objection;

3. Additional information should be included in the Disclosure Statement consistent with the discussion herein.