**Delmer ZWEYGARDT, Lavonne ZWEY-GARDT, and Delmer Zweygardt, dba Zweygardt Farms, Plaintiffs,**

v.

**The COLORADO NATIONAL BANK OF DENVER, Defendant.**

Adv. No. 84 G 1033.

United States District Court,
D. Colorado.

July 19, 1985.

Sterling and Miller by Harry Sterling, Denver, Colo. for plaintiffs.

Johnson, Robinson, Neff, Rogonetti by A. Bruce Campbell and J. Thomas MacDonald, Denver, Colo. for defendant.

## MEMORANDUM ORDER RE: PLAINTIFFS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

JAY L. GUECK, Bankruptcy Judge.

Plaintiffs/debtors, Delmer and Lavonne Zweygardt ("Zweygardts"), filed their Voluntary Chapter 11 Petition on October 19, 1984. The second largest claimant in this bankruptcy estate is the defendant. The Colorado National Bank of Denver ("CNB"). A proof of claim was filed by CNB reflecting a claim of $6,276,482.13, arising from two promissory notes. The first promissory note was for 3.8 million and was originally executed on September 27, 1983. This was further evidenced by a renewal note on June 1, 1984. An additional note for $2,000,000 was also executed on June 1, 1984.

Zweygardts filed the instant Adversary proceeding on December 18, 1984, and amended the Complaint on December 21, 1984. This Amended Complaint seeks damages against CNB for alleged violations of the Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691, *et seq.* and violations of the Rules of the Federal Reserve Board, 12 C.F.R. § 202.1, *et seq.* Additionally, the Amended Complaint claims a right of set-off by way of recoupment as to CNB's claims in the bankruptcy estate and asserts a claim of equitable subordination, pursuant to § 510 of the Bankruptcy Code. Zweygardts also assert that CNB's actions and conduct render its claims in this bankruptcy estate void. The Complaint acknowledges 5.8 million dollars as an outstanding debt, although the proof of claim sets forth that 6.275 million is owed. The damages claimed by Zweygardts are $100,-000.00, together with punitive damages of $10,000.00.

CNB answered on February 14, 1985, and asserted three counterclaims. Pursuant to Court order, leave has been granted to amend the Answer and Counterclaims by asserting an additional counterclaim.

The Answer is a general denial, together with various affirmative defenses. The Counterclaims are as follows:

**First Claim**—This claim is based on the two promissory notes for 3.8 million and 2 million dollars respectively, with the claimed amount due as of January 8, 1985 of $6,276,482.13. This is the same amount and same claim as contained in the proof of claim, based on the same promissory notes. It also involves the same transactions as those giving rise to the ECOA action.

**Second Claim**—CNB alleges that Zweygardts filed false financial statements in obtaining an extension of credit, within the meaning of § 523(a)(2)(B); that the debtors disposed of assets out of trust and failed to account, committing acts of fraud within the meaning of § 523(a)(2)(A); that the acts of the debtors amount to larceny, as contemplated in § 523(a)(4); and that debtors' acts constituted willful and malicious injury, as covered under § 523(a)(6).

**Third Claim**—CNB claims the action brought by the debtors under the ECOA is frivolous and should give rise to the imposition of attorneys' fees.

**Fourth Claim**—Here it is claimed that additional collateral in the form of an assignment of Zweygardts' interest in a promissory note payable to Delmer Zweygardt was granted to CNB on May 25, 1978, which the debtors now challenge as not being perfected. Thus, CNB seeks declaratory relief, determining that CNB has a perfected security interest in that promissory note and its underlying deed of trust. This claim was added after the debtors filed a Motion to Dismiss and for Summary Judgment.

1. By Order of this Court, dated February 26, 1985, the ECOA (erroneously referred to therein as "Equal Opportunity Act") action was determined to be beyond the jurisdiction of the bankruptcy court and indicated the proceeding would be retained here for pretrial preparation,

The Motion for Summary Judgment and to Dismiss was filed by the debtors on May 16, 1985. That motion seeks dismissal of the first claim for relief set forth in the Counterclaims and summary judgment on the second claim.[1]

CNB had also filed a Motion to Appoint a Trustee. The debtors sought summary judgment as to that motion as well. However, the Court has already appointed a Trustee. Thus, that portion of the Motion for Summary Judgment is now moot.

## MOTION TO DISMISS

■ The basis of the Motion to Dismiss the First Counterclaim is that it asserts a claim for relief in this Adversary proceeding for the same claim already set forth in the proof of claim filed in the underlying bankruptcy case. Thus, Zweygardts contend this Counterclaim is an improper attempt by CNB to obtain a judgment allowing its claim in the amount alleged and requires the debtors to respond in advance of the time they should be required to object to a proof of claim, pursuant to 11 U.S.C. §§ 501 and 502 and B.R.P. 3007, all as interpreted in *In re Werth*, 29 B.R. 220 (Bankr.Colo.1983), and *In re Mikart*, 9 B.R. 144 (Bankr.N.D.Ga.1981). It is argued by the debtors that they should be entitled to object to the proof of claim at any time during the bankruptcy case, with the timing of such an objection to be solely at the discretion of the debtors. *In re Werth*, supra. The debtors, here, have scheduled this debt as disputed but have not yet filed a formal objection to the Bank's proof of claim.

If this issue arose only in the context of the proof of claim, the debtors' position would be correct. The question is whether the creditor can assert such a disputed claim as a cause of action in response to litigation commenced by the debtor against

at which time it will be recommended that the United States District Court withdraw reference for purposes of trial. That Order also determined that the third claim set forth in the Counterclaim should be resolved by the District Court in connection with the ECOA action.

that creditor. No legal authority has been cited by either party to resolve this particular question.

These debtors have initiated litigation surrounding the very circumstances which give rise to the proof of claim. CNB's cause of action would be a compulsory counterclaim under F.R.C.P. 13 but for the provisions of B.R.P. 7013, which state as follows:

"Rule 13 F.R.Civ.P. applies in adversary proceedings, except that a party sued by a trustee or debtor in possession need not state as a counterclaim any claim which he has against the debtor, his property, or the estate, unless the claim arose after the entry of an order for relief."

Rule 13 F.R.C.P. is otherwise applicable in bankruptcy proceedings pursuant to B.R.P. 7013. Thus, CNB need not allege this counterclaim to preserve its rights. It is, therefore, necessary to address whether CNB is permitted to assert this cause of action, either as a permissive counterclaim or otherwise. The Federal Rules of Civil Procedure provide, in F.R.C.P. 13(b), as follows:

"(b) Permissive Counterclaims. A pleading may state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim."

As can be seen by the above, the cause of action in the First Counterclaim is not a permissive counterclaim, since it *does* arise out of the transaction that is the subject of the debtors' Complaint.

Turning, again, to B.R.P. 7013, while it provides "that a party sued by a ... debtor-in-possession *need not* state" (emphasis added) a pre-petition cause of action as a counterclaim, it is noted the Rule does not go so far as to say that the party *may not* allege such a cause of action.

Seldom would a party who is sued by the debtor possess a pre-petition cause of action that is not also set forth in a proof of claim, since B.R.P. 3003(c) requires a creditor in a Chapter 11 case to file a proof of claim by a bar date set by the court, pursuant to B.R.P. 3003(c)(3). Further, a "claim" is very broadly defined in 11 U.S.C. § 101(4). Thus, if Congress had intended for §§ 501 and 502, together with B.R.P. 3003 and 3007 to preclude the filing of a counterclaim for a pre-petition cause of action, it could easily have provided in B.R.P. 7013 that such pre-petition causes of action *may not* be asserted by way of a counterclaim. Congress could also easily have provided that the filing of a proof of claim shall be the sole method of asserting and establishing claims against the bankruptcy estate. Congress did not so provide.

On the basis of the foregoing analysis, I conclude that the First Counterclaim does state a cause of action that is properly assertable in response to a Complaint brought against CNB by the debtors.

## SUMMARY JUDGMENT

The basis upon which the Motion for Summary Judgment is made is that under undisputed facts there is no way the Bank can establish a *prima facie* case under any of the subsections of 11 U.S.C. § 523(a). The debtors argue that their Amended Chapter 11 Plan of Reorganization reflects an intention to pay the Bank's allowed claim in full, so that litigation over non-dischargeability is inappropriate where there is no unsecured claim which would be discharged in whole or in part without full payment. *See, generally,* 3 **Collier on Bankruptcy,** ¶ 502.01[2] (15th Ed.1984). Without getting into a discussion of that argument, together with feasibility of the Plan and the vicissitudes of the circumstances of various parties with respect to the Plan, the Court notes that the debtors Chapter 11 Plan has been withdrawn as of the date of this Order.

Zweygardts further argue that, as a matter of law, the Bank's allegations under § 523 are without foundation under the pleadings and discovery adduced to date. Zweygardts note that this Court has already determined in a cash collateral Order, dated April 11, 1985, that the value of

all assets owned by the debtors and scheduled in the underlying bankruptcy case significantly exceed the amount of liabilities owed. Although the Bank had valued the debtors assets at a significantly lower figure than that determined to be the value by the debtors, the Banks lower valuation was not accepted by the Court in the earlier cash collateral hearing. However, it must be observed that "value" carries different meanings under different sections of the Code and must be determined in light of the purpose for which it is being made. *In re Datair Systems Corporation*, 42 B.R. 241 (Bankr.N.D.Ill.1984).

■ I also note that in hearings held before me on the issue of cash collateral and further hearing on the appointment of a trustee, it became evident there were numerous issues of material fact in dispute between the parties. These issues relate to almost every facet of the elements of each of the subsections under 11 U.S.C. § 523(a). Inconsistencies and contradictions presented in hearings before this Court thus far cry out for additional evidence to resolve remaining issues of fact.

While I note some considerable concern over the ability of CNB to establish the elements of "larceny" under § 523(a)(4), it has been properly pleaded and is sufficiently the subject of factual dispute that evidence should be presented on the matter. Following the presentation of evidence, this Court will, of course, entertain any motions to dismiss. I will also be particularly attentive to the request for imposition of sanctions, including attorneys' fees, where it appears that claims or defenses have not been asserted in good faith.

Accordingly, the Motion for Summary Judgment is denied.