**In the Matter of Howard M. WILLIAMSON, Debtor.**

**Howard M. WILLIAMSON, Plaintiff,**

**v.**

**William Joseph LUCAS, Defendant.**

**Bankruptcy No. 84–50521.**
**Adv. No. 85–5083.**

United States Bankruptcy Court,
M.D. Georgia,
Macon Division.

Sept. 14, 1987.

---

**25.** *See* Fed.R.Civ.P. 54; R.Bankr.P. 7054.

Danny L. Akin, Macon, Ga., for plaintiff.

Mary Mendel Katz, Macon, Ga., for defendant.

## MEMORANDUM OPINION ON COMPLAINT TO DETERMINE EXTENT OF LIEN.

ROBERT F. HERSHNER, Jr., Chief Judge.

### STATEMENT OF CASE

On May 30, 1984, Howard M. Williamson, Plaintiff, filed a petition for relief under Chapter 7 of the Bankruptcy Code. William Joseph Lucas, Defendant, a judgment creditor of Plaintiff, holds a judgment lien in the amount of $60,000. The lien is entered on the General Execution Docket of Bleckley County, Georgia.

On June 7, 1984, a notice of insufficient assets was sent to Plaintiff's creditors pursuant to Bankruptcy Rule 2002(e).[1] The trustee filed a "Report of No Distribution" on November 6, 1985.[2]

On December 20, 1985, Plaintiff filed a complaint to determine the extent of Defendant's lien.[3] Plaintiff alleges that he owns only exempt property, therefore Defendant can not hold an allowed secured claim and Defendant's lien is void.

The complaint came on for trial on May 7, 1986. Plaintiff filed a proof of claim on the morning of May 7, 1986. By court order, the record was reopened on September 16, 1986 to allow Defendant to submit as additional evidence a copy of a civil complaint filed by Plaintiff in the Superior Court of Putnam County, Georgia.

Plaintiff was granted a discharge on December 15, 1986. The bankruptcy case has remained open pending the disposition of this adversary proceeding.[4]

The Court, having considered the evidence presented, now publishes its findings of fact and conclusions of law.

1. R.Bankr.P. 2002(e).

2. William M. Flatau was appointed trustee on May 20, 1984.

3. *See* 11 U.S.C.A. § 506 (West 1979 & Supp. 1987).

4. *See* 11 U.S.C.A. § 350(a) (West 1979).

## FINDINGS OF FACT

Plaintiff was divorced in late 1983. Pursuant to the divorce decree, Plaintiff was awarded the following property:

1) 1981 Grand Prix automobile

2) Volkswagen Rabbit automobile

3) Mobile homes

4) Savings certificates

5) Eatonton Broadcasting Co. stock

6) Cash from the Better Broadcasting checking account.

The divorce decree was on appeal when Plaintiff filed his bankruptcy petition on May 30, 1984. The decree was subsequently affirmed on appeal.

Plaintiff filed his Chapter 7 schedules on June 8, 1984. The following is a summary of the property listed by Plaintiff in his Schedule of Personal Property:

| Item | Value |
| --- | --- |
| Bank Account | $75.24 |
| Household Goods | $800.00 |
| Wearing Apparel | $200.00 |
| Claim for Back Wages | $131,000.00 |
| Life Insurance Policies | $700.00 |
| 900 shares of Eatonton Broadcasting Co. | $0.00 |
| 501 shares of Georgia Communications Corp. | $0.00 |

With the exception of the Eatonton Broadcasting Co. (EBC) stock, Plaintiff failed to list in his schedule any of the property awarded to him in the divorce decree. Plaintiff represented in his schedule that he owned no automobile or other vehicle. Plaintiff claimed the bank account, household goods, wearing apparel, and life insurance policies as exempt property.[5]

In May of 1985, Plaintiff prepared a personal financial statement which he submitted to three Georgia banks in connection with loan applications. The financial statement listed the following property:

| Item | Value | Amount Owed |
| --- | --- | --- |
| EBC stock | $75,000.00 | $5,000.00 |
| House in Cochran, Georgia | $70,000.00 | $39,000.00 |
| 1981 Grand Prix | $5,500.00 | $900.00 |
| 100% Georgia Communications Corp. stock | $450,000.00 [6] | |
| 7 mobile homes | $49,000.00 | $23,000.00 |
| Office buildings | $12,000.00 | $7,500.00 |
| One-fourth share of family residence in Toombs County, Georgia | $9,000.00 | |

The trial of this adversary proceeding was held on May 7, 1986. After the trial, Plaintiff filed a civil suit in the Superior Court in Putnam County, Georgia, in which he alleged that he owned 9,000 shares of EBC stock which he had purchased in 1973 for $48,000.[7]

The testimony and evidence presented at trial reflect a great deal of confusion and inconsistency regarding the property owned by Plaintiff at the time of the filing of the bankruptcy petition.[8] Plaintiff offered two explanations for this confusion. First, Plaintiff testified that the divorce

---

5. *See* 11 U.S.C.A. § 522 (West 1979 & Supp. 1987); O.C.G.A. § 44-13-100 (1982 & Supp. 1987). Defendant does not question the validity of these exemptions.

6. The value of the Georgia Communications Corp. (GCC) stock was listed as $450,000.00 "after indebtedness." Plaintiff did not list the amount owed on the GCC stock.

7. Plaintiff did not file the civil suit until after the hearing on this adversary proceeding was

concluded. Defendant's motion to reopen the case to add Plaintiff's complaint into evidence was granted by this Court on September 16, 1986.

8. A significant portion of the testimony presented at trial was directed toward establishing the value of the property owned by Plaintiff. In light of the Court's opinion, the evidence pertaining to the value of the property need not be addressed.

decree was on appeal at the time the petition was filed, therefore he did not consider the property award to vest in him any actual ownership rights.[9] Second, Plaintiff testified that there had been much uncertainty regarding whether certain assets were owned by him or by Georgia Communications Corporation (GCC). GCC was involved in a Chapter 11 case at the time Plaintiff filed his bankruptcy petition.[10] Plaintiff testified that until the GCC Chapter 11 case was completed, he was uncertain of the ownership of certain assets.

For purposes of clarity, the Court will examine the evidence on an item-by-item basis.

### 1. *Grand Prix*

Plaintiff admitted that the Grand Prix automobile was in his possession at the time he filed his Chapter 7 petition. Plaintiff testified that he did not list the automobile on his schedule of assets because, at the time the petition was filed, the certificate of title was still held in the name of his former wife. Plaintiff stated that he did not believe that the Grand Prix belonged to him because he did not hold the actual title.

### 2. *Volkswagen Rabbit*

Plaintiff admitted that he was awarded the Volkswagen Rabbit in the divorce decree. As noted earlier, Plaintiff stated that he was not certain of the finality of the divorce decree, therefore he did not consider himself the owner of the property awarded by the decree. Plaintiff testified that during the GCC Chapter 11 proceedings, ownership of the automobile was determined to be with GCC rather than with Plaintiff. The Court notes that this determination of ownership occurred after the date on which Plaintiff filed his Chapter 7 petition.

### 3. *Savings Certificates*

Plaintiff testified that the savings certificates were worth approximately $37,000.

Plaintiff stated that this sum was used to pay the claim of the Internal Revenue Service (IRS) and the fees of two attorneys. Plaintiff testified that following these disbursements, the money from the savings certificates was exhausted.[11]

### 4. *Mobile Homes*

The divorce decree awarded Plaintiff all of the mobile homes at the radio station owned by GCC. Plaintiff and Defendant are in agreement that there are seven mobile homes. Plaintiff failed to list any of these mobile homes in his bankruptcy schedule. On his May 9, 1985 personal financial statement, Plaintiff listed himself as owning all seven mobile homes.

At a section 341 [12] meeting of creditors in the GCC Chapter 11 case, Plaintiff stated that GCC owned two of the mobile homes and Plaintiff individually owned five of the mobile homes. Plaintiff stated that he had purchased the five mobile homes during 1981 and 1982. Plaintiff explained at the section 341 meeting that he had not listed the five mobile homes in his individual bankruptcy schedules because he did not think the mobile homes had any value.

At trial, Plaintiff testified that ownership of the mobile homes had been established during the GCC Chapter 11 case, and that all seven of the mobile homes were owned by GCC. The Court notes that this determination of ownership occurred after the filing of Plaintiff's bankruptcy petition.

### 5. *EBC Stock*

Plaintiff testified that he was awarded the EBC stock in the divorce decree. In his bankruptcy schedules, Plaintiff listed 900 shares of EBC stock with a zero dollar value. At trial, Plaintiff referred to listing 9000 shares of EBC stock at a zero dollar value. In the complaint filed by Plaintiff in the Superior Court in Putnam County, Georgia, Plaintiff stated that he purchased 9000 shares of EBC stock in 1973. The Court is persuaded that Plaintiff owned

---

**9.** The Court notes that the jury verdict which awarded Plaintiff property in the divorce proceeding was upheld on appeal.

**10.** The GCC Chapter 11 case was later converted to a Chapter 7 case.

**11.** Defendant did not assert that his lien had attached to the savings certificates.

**12.** 11 U.S.C.A. § 341 (West Supp.1987).

9000 shares of EBC stock when his bankruptcy petition was filed.

### 6. *GCC Stock*

In his bankruptcy schedules, Plaintiff listed 501 shares of GCC stock with a zero dollar value.[13] The stock was purchased in 1979 for $385,000. Plaintiff paid one-half of the purchase price. In April of 1985, Plaintiff bought an option to purchase 49.6% of the remaining GCC stock. On his personal financial statement, Plaintiff claimed to own one hundred percent of the GCC stock.

## CONCLUSIONS OF LAW

Plaintiff filed his bankruptcy case with this Court prior to the effective date of the Bankruptcy Amendments and Federal Judgeship Act of 1984, therefore the law in existence prior to that Act controls the issues before the Court.

At trial, Defendant objected to the filing of the proof of claim by Plaintiff. Defendant contends that this filing is untimely and, therefore, is insufficient to allow Plaintiff to proceed under section 506.[14] Defendant moved to dismiss Plaintiff's complaint on the basis of this late filing. The Court will address this motion prior to examining Plaintiff's complaint.

Section 506 of the Bankruptcy Code permits courts to determine the extent of allowed claims.[15] A claim is deemed allowed if a proof of claim has been filed in accordance with the requirements of the Code.[16] Therefore, the filing of a proof of claim is a prerequisite to a court's determination of secured status under section 506.

Under the general rule of subsection (d) of section 506, a lien which secures a claim that is not an allowed secured claim is void.[17] Subsection (d) provides:

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—

(1) a party in interest has not requested that the court determine and allow or disallow such claim under section 502 of this title; or

(2) such claim was disallowed only under section 502(e) of this title.

11 U.S.C.A. § 506(d) (West 1979). A lien which is not void will survive the debtor's discharge in bankruptcy. 3 *Collier on Bankruptcy* ¶ 506.07 (15th ed. 1987).

■ The issue before the Court is whether Plaintiff filed the proof of claim in a timely manner, thereby allowing Plaintiff to utilize the provisions of section 506. If the filing by Plaintiff is untimely or insufficient, then whatever lien Defendant has will survive Plaintiff's discharge.

Section 501(c) and Rule 3004 provide that if a creditor does not timely file a proof of claim, the debtor may file a proof of claim on behalf of the creditor. 11 U.S.C.A. § 501(c) (West 1979); R.Bankr.P. 3004. Defendant failed to file a proof of claim in this case, therefore Plaintiff was entitled to file one on Defendant's behalf.

Although Rule 3004 sets forth the time at which a debtor may initially file a proof of claim, it does not establish a deadline for the filing of a proof of claim.[18] The final date for the filing of a proof of claim is set forth in Rule 3002(c), which provides: "In a chapter 7 liquidation or chapter 13 individual's debt adjustment case, a proof of claim shall be filed within 90 days after the first date set for the meeting of creditors called pursuant to § 341(a) of the Code...." R.Bankr.P. 3002(c). There are six exceptions to this rule. The fifth exception states that an extension of time for the

---

**13.** GCC operates a radio station located in Cochran, Georgia. At the time of trial, this station was operating on the air. Plaintiff testified that all of the GCC stock and equipment were encumbered by liens, therefore he felt the stock had no value at the time he filed his petition.

**14.** 11 U.S.C.A. § 506 (West 1979).

**15.** 11 U.S.C.A. § 506(a) (West 1979).

**16.** *See* 11 U.S.C.A. §§ 501, 502 (West 1979). *See also* R.Bankr.P. 3002.

**17.** 11 U.S.C.A. § 506(d) (West 1979).

**18.** Under the Amended Rules of Practice and Procedure in Bankruptcy, which took effect on August 1, 1987, Rule 3004 provides that a debtor or trustee may file a proof of claim within 30 days of the time set for filing under Rule 3002.

filing of a proof of claim will be granted "[i]f notice of insufficient assets to pay a dividend was given to creditors pursuant to Rule 2002(e), and subsequently the trustee notifies the court that payment of a dividend appears possible...." R.Bankr.P. 3002(c)(5). A notice of insufficient assets was issued to creditors in this bankruptcy case on June 7, 1984. The trustee filed a no asset report on November 6, 1985. This notice in effect stayed the time limitation for the filing of a proof of claim by a party in interest.

Since no time limitation for the filing of a proof of claim existed in this case, the Court must look to the equities involved in determining whether Plaintiff's filing of the proof of claim should be allowed. The Court notes that Defendant had notice of the basis of Plaintiff's complaint and was adequately prepared to proceed with the hearing. Defendant has not shown that he was unfairly prejudiced by Plaintiff's last minute filing of the proof of claim. The Court concludes that the filing of the proof of claim by Plaintiff is sufficient to classify Defendant's claim as an allowed claim and to permit Plaintiff to proceed under section 506.

■ Plaintiff initially seeks to have the Court determine the secured status of Defendant's lien. Under subsection (a) of section 506, an allowed claim of a creditor secured by a lien on property in which the estate has an interest is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property. 11 U.S.C.A. § 506(a) (West 1979). Thus, the Court must first determine whether the estate has an interest in

the property. If the Court finds that the estate does have an interest in the property, then the Court must determine whether Defendant's lien actually attached to it. If the Court finds that the lien did attach to it, then the Court must determine the value of Defendant's interest in the estate's interest in the property.

Section 541(a) states that property of the estate shall include all legal and equitable interests of the debtor in property at the commencement of the case.[19] Defendant asserts that his lien has attached to the Grand Prix automobile, the EBC stock, the GCC stock, and the mobile homes.[20] Plaintiff was awarded these items in the divorce decree. This decree granted Plaintiff a legal interest in the property awarded. The presence of a pending appeal did not extinguish this interest.[21] The Court concludes that at the commencement of the bankruptcy case, Plaintiff held a protectable legal interest in the property awarded him in the divorce decree. This interest became property of the estate under section 541.[22]

Since the Court finds that the estate did acquire an interest in the subject property, the Court must now determine whether Defendant's lien attached to the property. The Court must look to state law to determine whether Defendant's lien attached to the property.

■ Defendant contends that his lien has attached to the Grand Prix and the mobile homes by virtue of section 9–12–80 of the Georgia Code, which provides that judgments are binding against all of the property of a judgment defendant.[23] Under sec-

19. 11 U.S.C.A. § 541(a) (West 1979).

20. Defendant did not assert that his lien attached to the Volkswagen Rabbit. The Court notes that the section of this opinion pertaining to the validity of Defendant's lien against the Grand Prix and the mobile homes would also apply to the Volkswagen Rabbit.

21. Under Georgia law, an appeal suspends but does not vacate a judgment. See O.C.G.A. § 5–3–7 (1982).

22. The Court notes that Plaintiff failed to list his interest in this property in his bankruptcy schedules. The Court also notes that Plaintiff

failed to amend his schedules to reflect his interest in this property when the divorce settlement was affirmed on appeal. See R.Bankr.P. 1009.

23. See O.C.G.A. § 9–12–80 (Supp.1987). Section 9–12–80 provides: "All judgments obtained in the superior courts, magistrate courts, or other courts of this state shall be of equal dignity and shall bind all the property of the defendant in judgment, both real and personal, from the date of such judgments except as otherwise provided in this Code." *Id.*

tion 40–1–1(68) of the Georgia Code, the Grand Prix and the mobile homes are classified as vehicles. O.C.G.A. § 40–1–1(68) (1985). The method for perfecting a security interest in a vehicle is set forth in section 40–3–53 of the Georgia Code. O.C.G. A. § 40–3–53 (1985). Defendant admits that he has not perfected his lien in the Grand Prix or mobile homes, but would argue to the Court that section 506 of the Bankruptcy Code requires only that a lien have attached to the property of the estate, not that the lien be perfected.

Section 9–12–80 of the Georgia Code provides that a judgment binds all property of the defendant in judgment, "except as otherwise provided in the Georgia Code." Section 40–3–53 of the Georgia Code states that no lien shall be effective against a vehicle unless the lien is perfected under the requirements of that section.[24] It is a general rule of construction that the special controls the general,[25] therefore section 40–3–53 must be interpreted as an exception to section 9–12–80. Since Defendant has not perfected his lien against Plaintiff's Grand Prix and the mobile homes, Defendant's lien is not effective against the Grand Prix and the mobile homes. The Court concludes that Defendant's lien did not attach to the Grand Prix and the mobile homes.

■ Defendant also contends that his lien has attached to the EBC stock and the GCC stock. Section 11–8–317 of the Georgia Code states that "[n]o attachment or levy upon a security or any share ... shall be valid until the security is actually seized by the officer making the attachment or levy...." O.C.G.A. § 11–8–317(1) (1982). This section must be read as providing an exception to section 9–12–80. Since Defendant did not initiate any actual seizure of either the EBC stock or the GCC stock,

Defendant's lien has not validly attached to this property.

Under the law of Georgia, Defendant's lien has not attached to Plaintiff's Grand Prix, mobile homes, or corporate stock. Therefore, Defendant's lien does not secure an interest in this property as required by section 506 of the Bankruptcy Code. As Defendant has not presented any other property of Plaintiff to which its lien could attach, the Court finds that Defendant's claim is unsecured under section 506.

Plaintiff has requested that Defendant's lien be declared void under section 522.[26] Plaintiff asserts that he has no property that is not exempt property to which Defendant's lien could attach.[27]

■ Defendant contends that the doctrine of laches bars Plaintiff from seeking to void the lien and from seeking to determine the secured status of the lien. Generally, the doctrine of laches will be invoked only when a claim or objection will prejudice a party's position. Mere lapse of time is usually insufficient to activate this doctrine. *Ansley Park Plumbing & Heating Co. v. Mikart, Inc. (In re Mikart, Inc.)*, 9 B.R. 144, 148 (Bankr.N.D.Ga.1981) (citing *In re American S.S. Nav. Co.*, 14 F.Supp. 106 (E.D.Pa.1933), *aff'd sub. nom Cooper v. Rauch*, 82 F.2d 1005 (3d Cir.1936)). In the present adversary proceeding, Defendant has made no showing that he has been harmed by Plaintiff's delay in filing his complaint. Defendant has not shown that he has changed his position or detrimentally relied upon Plaintiff's failure to file the complaint at an earlier date, nor has he shown how allowing Plaintiff's complaint will cause a perceptible inequity. Mere disappointment in losing his interest is not sufficient to constitute harm to Defendant.

---

24. O.C.G.A. § 40–3–53(f) (1985).

25. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934).

26. 11 U.S.C.A. § 522 (West 1979). Section 522(f)(1) provides:
> (f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to

which the debtor would have been entitled under subsection (b) of this section, if such lien is—
> (1) a judicial lien; or

*Id.* 11 U.S.C.A. § 522(f)(1) (West 1979).

27. The parties have agreed that Defendant's lien is not effective against Plaintiff's claim for back wages.

*See Rheinbolt v. Credit Thrift of America (In re Rheinbolt),* 24 B.R. 167, 170, 7 Collier Bankr.Cas.2d 739, 743 (Bankr.S.D.Ohio 1982); *Tarrant v. Spenard Builders Supply, Inc. (In re Tarrant),* 19 B.R. 360, 364, 9 Bankr.Ct. Dec. 413, 415 (Bankr.D.Alaska 1982). The Court concludes that Plaintiff's complaint is not barred by laches.

As previously noted, Defendant's lien has not attached to Plaintiff's Grand Prix, mobile homes, or corporate stock. The Court can find no other property to which Defendant's lien has attached that is not exempt property. Therefore, Defendant's lien is declared void.

Defendant requests that all costs be taxed against Plaintiff. Because Defendant has not prevailed in this adversary proceeding, the request will be denied.