**In re MERRITT LOGAN, INC., trading as Rancocas Thriftway and Morris Markets, Debtor.**

**Bankruptcy No. 87–00550F.**

United States Bankruptcy Court, E.D. Pennsylvania.

Jan. 16, 1990.

Janet M. Sonnenfeld, Philadelphia, Pa., for debtor, Merritt Logan, Inc.

Marc Alan Krefetz, Melnik, Morgan, Bor & Bornstein, P.A., Cherry Hill, N.J., for creditor, Fleming Foods of Pennsylvania.

James J. O'Connell, Asst. U.S. Trustee, Philadelphia, Pa.

## MEMORANDUM OPINION

### BRUCE I. FOX, Bankruptcy Judge:

The principal narrow issue before me requires a determination as to the appropriate procedural rules to be utilized by the district court when it withdraws the reference of an adversary proceeding pending in bankruptcy court. Normally, this would be a concern addressed to the district court itself. However, the debtor has filed an objection to the proofs of claim filed by Fleming Foods of Pennsylvania ("Fleming") based, in part, upon the application of the compulsory counterclaim provision of Federal Rule of Civil Procedure 13(a). Thus, one issue is whether this procedural rule or Bankruptcy Rule 7013—which does not contain the same compulsory counterclaim provision—applies. If I conclude that the creditor's proofs are not barred as compulsory counterclaims which were required to be asserted in district court litigation between the parties, the debtor then requests that they be disallowed on the basis of judicial estoppel. The facts underlying this dispute are as follows.

### I.

On February 3, 1987, the debtor filed its voluntary petition in bankruptcy under chapter 11. Fleming filed two proofs of claim against the debtor on March 17, 1987 in the amount of $623,066.15 (as both a secured and unsecured claim). The bases of these proofs are the amounts claimed for, *inter alia*, lost inventory and equipment provided, as well as the balance of notes due plus interest thereon, as will be discussed more fully below.

The debtor then commenced an adversary proceeding in this bankruptcy court against Fleming, Hussman Refrigeration, Inc. and Engineering and Refrigeration, Inc. ("E & R"). A motion to withdraw the reference was filed by E & R; as none of the parties opposed this motion, the reference was withdrawn by the district court. 28 U.S.C. § 157(d).

The complaint alleged that the defendants had sold to the debtor/plaintiff a defective and inoperative refrigeration system, had failed to install the system properly, and had failed to provide the necessary repairs and maintenance of the system at the debtor's New Jersey store.[1] It was alleged that this conduct caused the debtor to lose large sums of money, causing it to file the chapter 11 petition and forcing it to close the New Jersey store.

The adversary proceeding went to jury trial in district court, presided over by the Honorable Donald W. VanArtsdalen on November 14, 1988. After three weeks of trial, the matter was submitted to the jury together with special interrogatories. In its answers to these special interrogatories, the jury found that Fleming breached the terms and conditions of its extension of credit and/or loan to the debtor by demanding repayment before it was due, which demand was a proximate cause of financial loss or damage to the debtor in the amount of $200,000.00. The jury also found that the refrigeration system sold to the debtor pursuant to a contract with Fleming, under which Fleming was responsible to the debtor for the installation and repair of the system, was negligently designed (by Hussmann Refrigeration) and installed (by E & R), which negligence proximately caused loss to the debtor,[2] and found that the amount of financial loss suffered by the debtor due to this negligence was $550,000.00.[3] The jury further found the

---

[1.] The debtor owned and operated two supermarkets, "Morris' Market" in Philadelphia and "Rancocas Thriftway" in Willingboro, New Jersey. The events complained of in the adversary proceeding occurred in the New Jersey store.

[2.] The jury did not find that the system had been negligently maintained and/or repaired by either of the two defendants not now before me.

[3.] This figure includes $100,000.00 loss of products, $50,000.00 in lost profits and $400,000 lost in the cost of replacement and/or installation of the refrigeration system.

debtor not negligent in the maintenance of the refrigeration system. Finally, the jury found that the debtor incurred loss of profits in the amount of $1,000,000.00 due to the failure of the system to operate in accordance with the terms, conditions or warranties of the contract of sale. Thus, the total damages awarded by the jury was in the amount of $1,750,000.00.

Judgment was entered on the jury's verdict, and all the defendants filed motions for judgment n.o.v., or for a new trial. With respect to Fleming's motion, the District Court found that there was evidence to support the finding of liability, but that there was insufficient evidence to support the jury's damage award of $200,000.00. The court therefore granted judgment n.o.v. as to that part of the damages award and, after post-trial motions, the debtor/plaintiff's award was reduced from $1,750,000.00 to $1,550,000.00. All three defendants filed appeals of the trial court's decision, and the debtor filed certain cross appeals; argument was heard by the Third Circuit on December 11, 1989 and to date no decision has been announced. *Merritt Logan, Inc. v. Fleming Companies, Inc.,* No. 89–1522, 89–1523, 89–1524, 89–1525.

The debtor filed its objection to Fleming's proofs of claims on September 15, 1989. The objection asserts that Fleming was bound by Federal Rule of Civil Procedure 13(a) to bring its claims set forth in its proofs of claim as a compulsory counterclaim in the district court litigation and, as it failed to do so, Fleming is barred from raising these claims against debtor in this court pursuant to the principle of *res judicata.*

The debtor asserts, and Fleming does not dispute, that the jury was aware that Fleming took the position that it held a substantial claim against debtor which it had written off as uncollectable.

## II.

■ Fed.R.Civ.P. 13(a) requires that a defendant assert a compulsory counterclaim or lose that claim. Rule 13(a) states:

(a) Compulsory Counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon the claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13.

A "compulsory counterclaim" is understood to be a counterclaim arising out of the same transaction or occurrence that is the subject matter of the opposing party's claim. *E.g., Davis & Cox v. Summa Corp.,* 751 F.2d 1507 (9th Cir.1985); *Big Cola Corp. v. World Bottling Co.,* 134 F.2d 718 (6th Cir.1943); *Matter of Penn Central Transp. Co.,* 419 F.Supp. 1376 (E.D.Pa.1976). A liberal and broad construction is given to claims and counterclaims to determine whether they arise out of the same transaction or occurrence under this rule for compulsory counterclaims. *National Research Bureau, Inc. v. Bartholomew,* 482 F.2d 386 (3d Cir.1973). The question is whether this procedural rule governs bankruptcy adversary proceedings tried in district court.

Among the types of disputes which may occur within a bankruptcy case are "adversary proceedings." These are disputes that are commenced by the filing of complaint, that may assert a cause of action based either upon bankruptcy or non-bankruptcy law, and that are governed by rules of procedure derived from, but not identical to, the Federal Rules of Civil Procedure. The Bankruptcy Rules, just like the Federal Rules of Procedure, were recommended by an Advisory Committee, promulgated by the Supreme Court and enacted by Congress. A portion of the current Bankruptcy Rules are those found in Part VII, which

govern the procedure for resolution of adversary proceedings. While the procedural rules for adversary proceedings are, in many respects, identical to the rules governing civil actions in district court, they do contain some differences. These differences are designed to reflect various concerns and policies unique to the national bankruptcy system set out both in substantive bankruptcy law, 11 U.S.C. §§ 101 *et seq.* and in bankruptcy subject matter jurisdiction. 28 U.S.C. §§ 157, 1334.

For example, one difference between the bankruptcy rules and civil procedural rules is found in the method for obtaining personal jurisdiction over defendants. In adversary proceedings, there is nationwide service of process under Bankr.R. 7004. *See, e.g., Wieboldt Stores, Inc. v. Schottenstein,* 94 B.R. 488 (N.D.Ill.1988); *In re Fleet,* 53 B.R. 833 (Bankr.E.D.Pa.1985). In contrast, Fed.R.Civ.P. 4(f) limits service largely to state court boundaries. *E.g., Alger v. Hayes,* 452 F.2d 841 (8th Cir.1972). *See also Matter of Whippany Paper Bd. Co.,* 15 B.R. 312 (Bankr.D.N.J.1981). Another difference, more germane to the instant dispute, is found in Bankr.R. 7013, Counterclaim and Cross–Claim, which states:

> Rule 13 Fed.R.Civ.P. applies in adversary proceedings, *except that a party sued by a trustee or debtor in possession need not state as a counterclaim any claim that the party has against the debtor, the debtor's property, or the estate, unless the claim arose after the entry of an order for relief.* A trustee or debtor in possession who fails to plead a counterclaim through oversight, inadvertence, or excusable neglect, or when justice so requires, may by leave of court amend the pleading, or commence a new adversary proceeding or separate action.

(emphasis added).

By its terms, the only counterclaims which must be asserted by a creditor/defendant sued by the trustee or debtor in

possession[4] are those arising postpetition. *See 9 Collier on Bankruptcy* ¶ 7013.04 at 7013–6 (15th ed. 1989). Claims possessed by the creditor which arose prepetition need not be asserted as compulsory counterclaims. They may be so asserted,[5] or the creditor may choose to raise them by filing a proof of claim. *See Zweygardt v. Colorado Nat'l Bank,* 51 B.R. 214 (Bankr. D.Colo.1985).

Bankruptcy Rule 7013 was preceded by former Rule 713, which did not differ in significant ways from the current rule (at least for purposes of the instant controversy). Rule 713 also incorporated by reference Rule 13 of the Federal Rules of Procedure, which "is substantially former Equity Rule 30 (Answer–Contents–Counterclaim), broadened to include legal as well as equitable counterclaims." Notes of Advisory Committee on Rules, No. 1. The purpose of Rule 13 is to permit resolution of all controversies arising out of common matters in a single law suit and to prevent multiplicity of actions. *Southern Const. Co. v. U.S.,* 371 U.S. 57, 83 S.Ct. 108, 9 L.Ed.2d 31 (1962); *Banco Nacional de Cuba v. Chase Manhattan Bank,* 658 F.2d 875 (2d Cir.1981); *Bristol Farmers Market & Auction Co. v. Arlen Realty & Develop. Corp.,* 589 F.2d 1214 (3d Cir.1978). This, of course, fosters the economical and efficient disposition of claims between parties. *9 Collier on Bankruptcy* at 7013–3.

In the bankruptcy context, the competing interest in protecting the debtor's estate caused only the partial incorporation of Rule 13 into Bank.R. 7013. As noted by a leading commentator:

> Strict compliance with Civil Rule 13 could work to the disadvantage of the administration of a debtor's estate, making it less expeditious, efficient and economical. A broader range of discretion is permitted by Rule 7013, which relaxes some of the more strict requirements contained in Civil Rule 13. It is the

---

**4.** This term is defined by statute. 11 U.S.C. § 1101(1).

**5.** Whether such counterclaims may be raised only after the creditor has obtained relief from

the automatic stay, *In re Lessig Constr., Inc.,* 67 B.R. 436, 444 (Bankr.E.D.Pa.1987), I need not decide. *Compare In re Bell & Beckwith,* 50 B.R. 422, 429 (Bankr.N.D.Ohio 1985).

difference in purpose of the two types of proceedings that leads to the difference in the two rules and the special adaptation of the counterclaim rule by Bankruptcy Rule 7013.

9 *Collier on Bankruptcy* at 7013–3.

Thus, unlike Civil Rule 13(a), which states that a compulsory counterclaim must be pleaded or otherwise lost, Bankr.R. 7013 recognizes the bankruptcy procedures applicable to claims (i.e. the filing by a creditor of a proof of claim) and therefore provides that a counterclaim by a party sued by the debtor in possession or trustee is not compulsory as to prepetition claims. *See Zweygardt v. Colorado Nat'l Bank*, 51 B.R. at 216.

The claim of Fleming here arose prepetition. Thus, if Bankr.R. 7013 is applicable, the debtor concedes that Fleming's proofs would not be barred. It argues, though, in a footnote to its memorandum, at 8 n. 2, and in greater detail its reply memorandum, that the bankruptcy rules lost applicability once the adversary proceeding was withdrawn by the district court pursuant to 28 U.S.C. § 157(d).[6] Respectfully, I must disagree.

The concepts of referring and withdrawing bankruptcy cases and adversary proceedings were congressional devices intended to meet constitutional concerns raised by the Supreme Court in *Northern Pipeline Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (*Marathon*). The jurisdictional changes to 28 U.S.C. § 1334 as well as the enactment of 28 U.S.C. § 157 were designed to provide true Article III oversight to Article I courts. The result is that now the district court is the "bankruptcy court," *see, e.g., Thomas Steel Corp. v. Bethlehem Rebar Industries, Inc.*, 101 B.R. 16 (Bankr. N.D.Ill.1989), and that bankruptcy judges are units of the district court. Bankruptcy cases and proceedings are, in a *de jure* sense, filed with the district court which then refers them to bankruptcy judges.

Since its initial promulgation, Fed.R. Civ.P. 81(a)(1) has excluded "proceedings in bankruptcy" from the scope of the federal civil rules of procedure, "except in so far as they may be made applicable thereto by rules promulgated by the Supreme Court of the United States." *See* 7 Part 2 *Moore's Federal Practice* ¶ 81.01[2] (2d ed. 1989). By former Supreme Court General Order 37, bankruptcy proceedings were governed by the federal civil procedural rules until 1973. At that point, the Supreme Court promulgated nationwide rules of bankruptcy procedure. Thereafter, bankruptcy proceedings were governed by the rules in Part VII, Rules 701 to 782, and these rules were quite similar to those in use for civil actions in district courts. As mentioned above, though, Rule 713 did not have the same compulsory counterclaim provision as Fed.R.Civ.P. 13; the same distinction exists in current Rule 7013, effective August 1, 1983.

The bankruptcy procedural rules have lagged a bit behind the changes in substantive and jurisdictional law. The need for new rules of bankruptcy procedure to address the enactment of the Bankruptcy Reform Act of 1978 caused the promulgation of the current Bankruptcy Rules effective August 1983. Prior to the *Marathon* decision, the jurisdictional schema limited trial of adversary proceedings to the bankruptcy court. After *Marathon*, the changes made in bankruptcy court and district court jurisdiction rendered it possible for the district court to try adversary proceedings in two ways. First, the district court could withdraw the reference; that is, even though the district court had referred the entire bankruptcy case and all proceedings arising therein to a bankruptcy judge, it could decide to withdraw a proceeding from the bankruptcy judge and conduct the trial. 28 U.S.C. § 157(d). Second, in a non-core pro-

**6.** This subsection states:
(d) The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

ceeding, for which the bankruptcy judge could only make a recommendation and could not enter final judgement, the district court could conduct a *de novo* trial. 28 U.S.C. § 157(c)(1).[7]

Prior to 1987, the bankruptcy rules did not address the procedure to be followed in district court trials of bankruptcy adversary proceedings. Given the significant differences in the method of service of the complaint and summons between the bankruptcy rules and the civil procedural rules, it is not surprising that the question of the correct method to obtain personal jurisdiction would arise. In *Windsor Communications Group, Inc. v. Grant*, 75 B.R. 713 (E.D.Pa.1985), the district court accepted the recommendation of the bankruptcy court that Bankr.R. 7004 and not Fed.R. Civ.P. 4 applied in non-core proceedings upon review in the district court. This result was based upon an historical view of bankruptcy jurisdiction, the intent behind the rules of bankruptcy procedure, and the application of the *Marathon* decision and the later enacted Emergency Rule. The *Windsor* decision, though, acknowledged that the Bankruptcy Rules, particularly Rule 1001 (which defined the scope of the rules) and Rule 9001 (establishing general definitions for terms used in the Rules), did not clearly state their applicability to bankruptcy proceedings initially tried in district court or reviewed *de novo* by that court.

In 1987, the Supreme Court promulgated bankruptcy rule amendments designed in part to address the jurisdictional changes in bankruptcy litigation after *Marathon*, and which resolved this ambiguity. Both Rules 1001 and 9001 were amended to make clear that the Bankruptcy Rules, *not* the Federal Rules of Civil Procedure, apply when the district court hears an adversary proceeding. Rule 9001 was altered to delete the definition of "Bankruptcy Court" and replace it with a definition of "court or judge"; Rule 1001 was amended so that it no longer states that the rules govern only procedure in "United States Bankruptcy Courts." Effective August 1, 1987[8] the scope of the rules, as set out in Rule 1001, is to "govern procedure in cases under title 11 of the United States Code." As explained by the Advisory Committee Note (1987) to Rule 1001:

> This amended Bankruptcy Rule 1001 makes the Bankruptcy Rules applicable to cases and proceedings under title 11, *whether before the district judges or the bankruptcy judges of the district.*

(emphasis added). Similarly, the Advisory Committee Note (1987) to Rule 9001 states:

> The rule is also amended to include a definition of "court or judge." Since a case or proceeding may be before a bankruptcy judge of a judge of the district court, "court or judge" is defined to mean the judicial officer before whom the case or proceeding is pending.

Giving consideration to the evolution of the bankruptcy procedural rules, the evolution of bankruptcy jurisdiction, the current rules in effect, and the Advisory Committee explanations of the 1987 rule changes,[9] I conclude that the procedure which governed the district court's resolution of the adversary proceeding involving the debtor and Fleming included Bankr.R. 7013 and not Fed.R.Civ.P. 13. As a result, the in-

---

7. In addition, a party may be granted relief from the automatic stay to continue with district court litigation against a debtor. That grant of relief does not transform the civil action into an adversary proceeding. *Binder v. Sekulow*, 106 B.R. 313, 314 (N.D.Ga.1989).

8. As set out by order of the Supreme Court, *see* 8 *Collier on Bankruptcy* ¶ 1001.03 at 1001–7 (15th ed. 1989), these amended rules were to take effect on August 1, 1987, and were intended to govern all proceedings thereafter commenced and then pending, insofar as just and practicable. Although the debtor's adversary proceeding against Fleming was filed prior to August 1, 1987, it was pending on that date and it would

be neither unjust nor impractical to apply the amended rules to the proceeding. This is especially true in that, for purposes of this dispute, they were simply clarifying an ambiguity.

9. Courts have long recognized that official Advisory Committee Notes to federal procedural rules may properly be used as aids to interpretation of those rules. *See Mississippi Publishing Corp. v. Murphree*, 326 U.S. 438, 66 S.Ct. 242, 90 L.Ed. 185 (1946); *In re Kearney*, 105 B.R. 260, 264 n. 4 (Bankr.E.D.Pa.1989). *See also In re Crouthamel Potato Chip Co.*, 786 F.2d 141 (3d Cir.1986).

stant proofs, even if they were to fall within the ambit of a compulsory counterclaim, are not now barred because Fleming had the option to assert its claims by filing timely proofs with the bankruptcy court and litigating those proofs in this court.[10]

### III.

Alternatively, the debtor implicitly suggests that if the Federal Rules of Civil Procedure do not govern all bankruptcy adversary proceedings withdrawn by the district court then at least those adversary proceedings decided in the district court by jury, including this proceeding, should be so governed. I see no basis for this court making such a distinction on this record.

Prior to April 1987, Bankr.R. 9015 governed jury trial procedures of adversary proceedings. Subsections (a) through (e) of Rule 9015 were adaptations of Fed.R.Civ.P. 38 and 39 while subsection (f) simply incorporated Fed.R.Civ.P. 47–51. Thus, the procedure for trying adversary proceedings by jury under the bankruptcy rules was quite similar to the procedural rules in use in district courts. The 1987 amendments to the Bankruptcy Rules abrogated Rule 9015. The Advisory Committee Note in 1987 stated that this action was taken so that Rule 9015 could not be cited to confer upon any party a substantive right to trial by jury in a bankruptcy proceeding, or be used to support the power of bankruptcy judges to conduct such trials. Those issues were then and still are the subject of judicial and scholarly disagreement, *see generally Grandfinanciera, S.A. v. Nordberg,* — U.S. —, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), and are not truly procedural issues. Until those issues were resolved, the Advisory Committee anticipated that local rules of procedure could be utilized to govern jury trials of bankruptcy proceedings, to the extent a jury trial was required to be held. Advisory Committee Note, 1987. *See also* Bankr.R. 9029.

That being so, I see no reason why the Federal Rules of Procedure governing jury trials could not properly be used by the district court when presiding over adversary proceedings tried by jury. There would be no conflict with the Bankruptcy Rules, and it would fill an interstice anticipated when the Bankruptcy Rules were amended in 1987. It does not follow, though, that the use of such rules of procedure by the district court requires that all of the Bankruptcy Rules governing adversary procedures be rendered inapplicable. Nor does it follow that there be two sets of procedures followed, depending upon the trier of fact in district court, on counterclaim issues such as those found in Rule 7013, where such issues are not affected by the identity of the fact finder (i.e., judge or jury). Therefore, I reject the debtor's contention that Rule 7013 is inapplicable to this dispute because the proceeding was resolved by jury.[11]

### IV.

The debtor's second objection is also flawed. The debtor suggests that Fleming raised before the jury both the existence of its claim against the estate and its lack of assertion of a counterclaim in that trial. The debtor suggests this trial strategy was used to achieve some jury sympathy and a reduction in any damage awarded against Fleming, despite the absence of a counterclaim. Debtor's Memorandum, at 18.[12] The debtor reasons that the jury may have offset Fleming's claim against its damage

---

**10.** Of course, whether issue preclusion (collateral estoppel) may be relevant in any determination concerning these proofs of claim is not now before me.

**11.** Not now before me is the interesting procedural question posed by cases such as *Century Hotels v. United States,* 1988 WL 16425, 1988 U.S.Dist. Lexis 1773 (E.D.La.1988) (district court decides to withdraw reference of two adversary proceedings pending in bankruptcy court because there is a factually similar civil action

then pending before the district court and the court then consolidates the matters for trial).

**12.** The debtor's memorandum of law contains a portion of the transcript wherein a witness testified that the debt claimed as owing to Fleming by the debtor was "written off." The internal bookkeeping activity of classifying a debt as uncollectable or a "bad debt" does not affect the legal obligation to repay, absent some novation or accord and satisfaction. *See In re Diaconx Corp.,* 69 B.R. 333, 341 (Bankr.E.D.Pa.1987).

award against Fleming. Thus, the debtor argues that Fleming is judicially estopped from now asserting any claim against the estate by way of a proof of claim.[13]

Alternatively, the debtor contends that judicial estoppel is appropriate because Fleming made use of Fed.R.Civ.P. 50 to file a motion for judgment notwithstanding the verdict, which was granted in part. By making use of this rule, which is not now found in the Bankruptcy Rules (as discussed above, due to the abrogation of Bankr.R. 9015), the debtor posits that Fleming should not be permitted to argue that the Bankruptcy Rules governed the trial in district court of their adversary proceeding.

A.

■ The concept of judicial estoppel is not universally followed. It "precludes a party from asserting a position in one legal proceeding which is contrary to a position it has already asserted in another." *Patriot Cinemas, Inc. v. Central Cinema Corp.*, 834 F.2d 208, 212 (1st Cir.1987). As it concerns the integrity of the judicial process, there need be no showing of reliance, privity or prejudice before such estoppel is applied. *Konstantinidis v. Chen*, 626 F.2d 933, 937 (D.C.Cir.1980). While in some circuits the doctrine of judicial estoppel is not accepted, *see id.*, at 938, in the Third Circuit it has long been recognized. *Scarano v. Central R. Co.*, 203 F.2d 510 (3d Cir. 1953). Indeed, as the debtor fairly notes, judicial estoppel was recently applied by the Court of Appeals in a dispute connected to a bankruptcy case. *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414 (3d Cir.), *cert. denied*, — U.S. ——, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988).

In defining this doctrine, the Third Circuit has explained:

> A plaintiff who has obtained relief from an adversary by asserting and offering proof to support one position may not be heard later in the same court to contradict himself in an effort to establish against the same adversary a second claim inconsistent with his earlier contention. Such use of inconsistent positions would most flagrantly exemplify that playing "fast and loose with the courts" which has been emphasized as an evil the courts should not tolerate.

*Scarano v. Central R. Co.*, 203 F.2d at 513.

Since Fleming has no right to be paid twice from the estate on any valid claim it possesses, I agree with the debtor that to the extent the jury credited in some fashion sums due Fleming from the debtor against sums due the debtor from Fleming, the instant proofs of claim should be disallowed. I also accept that the appropriate basis for such disallowance could be judicial estoppel, if Fleming had asserted in district court that it would not pursue its claims against the debtor's bankruptcy estate and the jury (or judge) then offset damages to which the debtor would have been entitled. *See Patriot Cinemas, Inc. v. Central Cinema Corp.* (party estopped from asserting antitrust claim when it had previously stated that such claim would not be pressed and thus prevailed on a procedural motion).

■ Because of the tension between the application of judicial estoppel and the liberal pleading rules (as well as a desire of courts to determine cases based upon the facts as established at trial before such courts), *see Konstantinidis v. Chen*, 626 F.2d at 938, the doctrine must be applied

---

13. The doctrines of equitable estoppel and collateral estoppel are related to judicial estoppel. Indeed, such labels are often blurred "when estoppel is asserted in one judicial proceeding on the basis of a position taken in a prior proceeding...." 1B *Moore's Federal Practice*, ¶ 0.405[8] at 239 (2d ed. 1988). *Compare County Fuel Co. Inc. v. Equitable Bank Corp.*, 832 F.2d 290 (4th Cir.1987) (preclusion principles—the court rejects, though, the principle of *res judicata*—bar a plaintiff from asserting a claim when

the plaintiff was a chapter 11 debtor, the defendant a creditor, and the creditor's bankruptcy proof of claim had been objected to only in part, the balance expressly stated as owing, and the partial objection had been disallowed). Here, the debtor raises only the question of judicial estoppel and in a manner that leads me to believe that it understands the different estoppel doctrines. Thus, I shall only address judicial estoppel.

with "caution." *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1167 (4th Cir.1982). The general viewpoint is that the application of judicial estoppel is appropriate when the inconsistent position has been successfully asserted previously. *See Patriot Cinemas, Inc. v. General Cinema Corp.*, 834 F.2d at 212; *United States v. Webber*, 396 F.2d 381, 385–86 (3d Cir.1968); *Scarano v. Central R. Co.*[14] *See also Allen v. Zurich Ins. Co.*, 667 F.2d at 1167 ("Though perhaps not necessarily confined to situations where the party asserting the earlier contrary position there prevailed, it is obviously more appropriate in that situation.").

■ Unfortunately for the debtor, there is no evidence to conclude that any offset was made by the jury to reflect Fleming's claims in bankruptcy. The jury's special interrogatories attached to the debtor's memorandum make no mention of any credit or offset, nor does the debtor refer to any other part of the district court record. Thus, even if I were to assume, as the debtor asserts, that statements made to the jury regarding Fleming's belief as to the uncollectability of its claim against the debtor represent an inconsistency of position that is tantamount to "playing fast and loose with the court" and thus capable of causing judicial estoppel, it would be inappropriate to apply the doctrine without some evidence of demonstrable benefit to Fleming.[15]

### B.

■ As discussed in part III above, Fleming did indeed, as the debtor argues, make use of various procedural devices which are provided by the Federal Rules of Civil Procedure. Not only did it file a motion under Rule 50, it asserted a cross-claim by virtue of Rule 13(g). Furthermore, it was successful, at least in part, on its motion for judgment n.o.v. and its cross-claim. But these actions alone do not justify the conclusion that Fleming was obligated to follow Fed.R.Civ.P. 13(a) and file a compulsory counterclaim.

First, the cross-claim provisions of Rule 13 are incorporated in Bankr.R. 7013. Rule 13 is incorporated in its entirety, except for a portion of the compulsory counterclaim provision. Thus, the assertion of a cross-claim is also in accord with bankruptcy procedure and cannot serve as a basis for estoppel.

Second, the Rule 50 motion, as discussed previously, did not contradict any procedure established by the bankruptcy rules. Thus, this dispute does not present the more difficult estoppel issue which would arise if parties to an adversary proceeding tried in district court had conducted the proceeding by applying procedural rules which differed from the bankruptcy rules. As a result, I cannot conclude that the doctrine of judicial estoppel is appropriate in this instance.

### V.

In its reply memorandum only, the debtor asserts that it has valid defenses on the merits to all or part of Fleming's proofs of claim, independent of the issues of preclusion or estoppel. It refers to portions of the trial transcript in district court—which were never offered in evidence but merely attached to its memorandum of law—and then states that these are but "some exam-

---

**14.** In its reply memorandum, the debtor suggests that the requirement that the prior inconsistent position must have been successfully asserted was only "*dicta*", Reply memorandum at 16, and relies upon *Oneida Motor Freight* for support. However, that case concerned the assertion of a claim by a former debtor in chapter 11 that never disclosed the existence of such a claim to creditors. Obviously, such silence affected the creditors' knowledge as to the scope of the bankruptcy estate under 11 U.S.C. § 541, as well as the accuracy of the disclosure statement and finality of the confirmed chapter 11 plan. The debtor's silence also, though, allowed the debtor to retain the claim for its own bene-

fit. Therefore, it is difficult to argue that the plaintiff in *Oneida* did not benefit from a prior inconsistent position—that is, its improper failure to disclose the existence of its claim—by its retention of that claim after confirmation.

**15.** Even this assumption is debatable for there is no suggestion that Fleming stated in the district court that it would not assert a proof of claim in the debtor's bankruptcy case. *Compare Patriot Cinemas v. Central Cinema Corp.* In fact, these proofs of claim were filed and pending at the time of trial.

ples of the types of factual and legal questions that must be resolved before Fleming can recover on its claims." Reply Memorandum, at 21.

At the hearing held on these objections to Fleming's proofs of claim, the debtor and Fleming both declined to present evidence.[16] On the record before me, there is no basis to determine in a fair manner what portion, if any, of Fleming's claims should be disallowed. This is not to now state, for this issue is not before me, that the debtor could not present evidence which would warrant reducing these claims. *See* Bankr.R. 3008. I now only determine that such evidence was not produced.

On the record presented I have no basis to disallow Fleming's claims. The debtor's objections that the claims should be disallowed based upon principles of *res judicata* and judicial estoppel shall therefore be denied.

---

**16.** The debtor's assertion that the entire record of the district court trial is of record before me in this proof of claim litigation is incorrect. *In re Aughenbaugh,* 125 F.2d 887, 889 (3d Cir. 1942). *Accord* Russell, *Bankruptcy Evidence Manual* § 201.5 (1987).